UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 15-20151-CR-3-MARTINEZ/GOODMAN

UNITED STATES OF AMERICA,

v.

FRANCKLIN PIERRE.

    Defendant.
_____/

# REPORT AND RECOMMENDATIONS ON COUNSEL'S
# CJA VOUCHER REQUEST FOR ATTORNEY'S FEES AND COSTS[1]

Under the Criminal Justice Act (the "CJA"), 18 U.S.C. § 3006A, the Court appointed Marc D. Seitles ("Counsel") to represent Defendant Francklin Pierre. [ECF No. 13]. Counsel submitted a CJA voucher application with appended, detailed time sheets, requesting as final payment $16,592.80 in attorney's fees and $963.33 in costs, totaling $17,556.13. United States District Judge Jose E. Martinez referred this matter to me for a Report and Recommendations. [ECF No. 218].

The total requested amount exceeds the $10,000 maximum that the CJA provides for attorney's fees in non-capital felony cases at the trial level. Guidelines, Vol. 7A,

---

[1] Although orders and reports and recommendations on applications for fees and costs from CJA counsel are often filed under seal, the under-seal status is justified because the order or report discusses privileged matters not otherwise disclosed in the public record. Here, by contrast, defense counsel discussed those matters in a publicly filed motion. Therefore, the Undersigned discerns no legitimate basis to file this report under seal.

Chapter 2, § 230.23.20. Accordingly, I ordered Counsel to file a motion justifying his request for fees in excess of the statutory cap. [ECF No. 219]. Counsel did so. [ECF No. 220].

Having reviewed the voucher, the motion, and the pertinent portions of the record, the Undersigned **respectfully recommends** that the District Court **approve** the voucher in its entirety.

I. CRIMINAL JUSTICE ACT GUIDELINES

The United States Judicial Conference developed the Guidelines for Administering the CJA and Related Statutes (the "Guidelines") to assist courts in applying the provisions of the CJA. *See In re Burger*, 498 U.S. 233, 234 (1991). The CJA plan for the Southern District of Florida explicitly states that "[p]ayment of fees and expenses to appointed counsel under this plan . . . shall be made in accordance with the provisions of the United States Judicial Conference's guidelines for the administration of the Criminal Justice Act[.]" *See* CJA Plan, Southern District of Florida.

The CJA provides that an appointed attorney shall be compensated for time expended in court and for time "reasonably expended out of court" at the conclusion of CJA representation. 18 U.S.C. § 3006A(d)(1). The CJA also provides for payment of "expenses reasonably incurred." *Id.* The district court, as the body empowered to "fix" the compensation of CJA-appointed attorneys, has the statutory authority and discretion to determine what is a reasonable expense or use of billable time. 18 U.S.C. §

2

3006A(d)(5); *United States. v. Griggs*, 240 F.3d 974 (11th Cir. 2001).

To recommend a fee exceeding the statutory maximum, the district court must first certify that the case involves "complex" **or** "extended" representation. 18 U.S.C. § 3006A(d)(3) (emphasis added). The court may find a case "complex" if the "legal or factual issues . . . are unusual, thus requiring the expenditure of more time, skill and effort by the lawyer than would normally be required in an average case." Guidelines, Vol. 7A, Chapter 2, § 230.23.40(b). A case is "extended" if "more time is reasonably required for total processing than the average case." *Id*. After certifying that the case is either "complex" or "extended," the district court must determine whether the amount sought is necessary to provide Counsel with fair compensation.

## II.  BACKGROUND

### A.  *Facts of the Case*

On February 26, 2015, the United States filed a criminal complaint against Pierre and two other individuals, alleging that the group had engaged in a conspiracy to import a controlled substance into the U.S., namely, five kilograms or more of cocaine. [ECF No. 1]. On March 10, 2015, the United States indicted these individuals on four drug charges: (1) conspiracy to import a controlled substance into the U.S., (2) the actual importation of the controlled substance into the U.S., (3) conspiracy to possess with intent to distribute a controlled substance, and (4) the actual possession with intent to distribute. [ECF No. 21].

3

Magistrate Judge Patrick A. White entered a standing discovery order shortly thereafter. [ECF No. 27]. The United States filed five separate responses to the discovery order. [ECF Nos. 29; 43; 52; 75; 77]. Counsel represents that the responses "totaled more than 3 CD's and 21 DVD's which consisted of thousands of pages of Police Reports, NCIC Reports, photographs, Interviews, Terminal, Vessell [sic], Toll Logs, schedules and numerous hours of surveillance video." [ECF No. 220, p. 2].

Counsel also states that "[f]rom the very beginning, Defendant Pierre expressed his innocence," leaving Counsel with "no other alternative but to prepare for the eminent possibility of a trial in this matter." [ECF No. 220, p. 2]. Trial was originally set for April 20, 2015. [ECF No. 28]. But the trial was then continued nine times, the last continuance being for February 21, 2017. [ECF Nos. 35; 63; 120; 136; 154; 169; 201; 206; 213]. The trial, however, never occurred because on January 18, 2017, the United States dismissed the indictment against Pierre with prejudice. [ECF No. 214].

While the case was pending, Counsel made numerous filings on Pierre's behalf. In Counsel's words, he provided more than 30 submissions "ranging from appointment of experts, motions to take foreign depositions, motions to suppress statements, motions requiring mental health evaluations, request for sanctions and challenging psychological competency issues as well as standard motions for cost, appointment and continuances." [ECF No. 220, p. 2]. The Undersigned was involved in several of those issues -- reviewing the memoranda, holding evidentiary hearings, issuing orders and

reports and recommendations, etc. -- which included, among others, the appointment of experts, suppression of evidence, and the question of whether Pierre was competent to stand trial.[2]

In his motion, Counsel also states that his job was made more difficult because Pierre spent "long periods of time" in Larkin Hospital, which Counsel had to visit on "numerous occasions." [ECF No. 220, p. 2]. Counsel's time records do show at least a dozen visits to Pierre at a hospital over several months.

Counsel also says "that he spent an inordinate amount of time trying to get family members approved to visit Mr. Pierre and was frequently bombarded with phone calls from family members to get updates on his medical condition and status of the case," but "did not bill CJA for any of this time." [ECF No. 220, p. 3].[3]

B. *CJA Voucher Request*

Counsel seeks $16,592.80 in legal fees, of which 5.30 hours were spent in court and 125.10 hours were spent out of court, totaling 130.4 hours. In addition, he requests

---

[2]  Relating to the competency issue, Counsel also says that he "fought to have Defendant Pierre evaluated by multiple doctors and utilized the assistance of an investigator to assure Defendant Pierre was capable of understanding the legal system that was charging him." [ECF No. 220, p. 2].

[3]  Counsel's time records *do* include time spent trying to grant Pierre's family visitation rights at the hospital. The Undersigned, however, will assume that what Counsel meant by saying that he did not bill "any of this time" was that he did not bill for, as he colorfully put it, being "bombarded" with phones calls from the family. And in fact, while Counsel's time records show several phone conferences with various persons, none state that they were with Pierre's family and about his condition or the case's status.

$963.33 in costs.

### C. *Voucher Amount -- Administrator's Review*

The Court's CJA administrator first reviewed the voucher for compliance with the Guidelines and mathematical accuracy. The administrator did not make any mathematical changes, but did note that the voucher sought compensation in excess of the $10,000 statutory cap. Thus, the administrator further noted that a letter or memo to the Court or a reduction below the cap would be required. The administrator also asked the District Court to consider adding the following notation to an order approving cap-exceeding compensation: "The court finds that the representation was in an extended / complex case and the amount approved is necessary to provide fair compensation."

## III. ANALYSIS

### A. *This Case was Extended and Complex*

To recommend that the District Court compensate Counsel in an amount that exceeds the statutory maximum, the Undersigned must first find that this case was either complex or extended. The Undersigned recommends that the District Court find that Counsel's representation was in an extended and complex case (compared to other, similar cases) and that the amount approved is necessary to provide fair compensation. Specifically, Pierre's trial was originally set for April 20, 2015. [ECF No. 28]. But the trial was continued nine times [ECF Nos. 35; 63; 120; 136; 154; 169; 201; 206; 213], with the United States ultimately dismissing the indictment against Pierre with prejudice on

January 18, 2017, almost two years after the case began. [ECF Nos. 1; 214].

In addition, while the case was pending, the United States filed five separate responses to the discovery order [ECF Nos. 29; 43; 52; 75; 77], which included "3 CD's and 21 DVD's" consisting of "thousands of pages of Police Reports, NCIC Reports, photographs, Interviews, Terminal, Vessell [sic], Toll Logs, schedules and numerous hours of surveillance video." [ECF No. 220, p. 2]. The case also gave rise to several complicated issues, "ranging from appointment of experts, motions to take foreign depositions, motions to suppress statements, motions requiring mental health evaluations, request for sanctions and challenging psychological competency issues as well as standard motions for cost, appointment and continuances." [ECF No. 220, p. 2].

As such, the case against Pierre was complex and extended.

**B.** *In-Court Hours*

Counsel seeks compensation for 5.30 in-court hours. The Undersigned finds this amount to be reasonable and recommends that Counsel be paid the full $674.30 for his in-court hours.

**C.** *Out-of-Court Hours*

Counsel seeks compensation for 125.10 out-of-court hours. The Undersigned finds this amount to be reasonable and recommends that Counsel be paid the full $15,918.50 for his out-of-court hours.

7

D. *Costs.*

Counsel seeks compensation for $963.33 in costs. The CJA administrator did not reduce any of the requested costs. The Undersigned finds this amount to be reasonable and recommends that Counsel be paid the full $963.33 in costs.

IV. **CONCLUSION**

For the reasons stated above, the Undersigned **respectfully recommends** that the District Court **approve** the voucher request of $17,556.13.

V. **OBJECTIONS**

In accordance with 28 U.S.C. § 636(b)(1) and Local Magistrate Rule 4(b), the parties shall have fourteen days from receipt of this Report and Recommendations to serve and file any written objections with the United States District Judge. Any party may respond to another party's objections within fourteen days after being served with the objection. Failure to file timely objections waives a party's right to review issues related to the defendant's plea under Federal Rule of Criminal Procedure 11 before the District Judge or the Court of Appeals (even under a plain error standard). *See* Fed. R. Crim. P. 59(b)(1), (2); *United States v. Lewis*, 492 F.3d 1219, 1222 (11th Cir. 2007).

**RESPECTFULLY RECOMMENDED** in Chambers, in Miami, Florida, on November 16, 2017.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Jose E. Martinez
All counsel of record